J-S35036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NASHEEM GREENSHLADE :
:
Appellant : No. 1544 MDA 2017

Appeal from the Judgment of Sentence August 4, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001077-2016

BEFORE: BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 11, 2018**

Nasheem Greenshlade[1] (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of second-degree murder[2] and related offenses in connection with the shooting death of Andrew Parker (victim). Upon review, we conclude that Appellant's challenge to the sufficiency of the evidence is meritless, and affirm the judgment of sentence.

Approximately two weeks before the shooting in this case, Ayanna Perryman, her friend Nashae Thompson, the victim, and the victim's friend

_____

[1] Appellant's last name is also spelled "Greenslade" throughout the record.

[2] 18 Pa.C.S.A. § 2502(b).

Brian,[3] were driving around Harrisburg.  N.T. Trial Vol. III, 5/24/17, at 356, 367.  The victim and Thompson got out of the car at a Sheetz convenience store, and Brian drove to a nearby hotel parking lot with Perryman and asked her to have sex with him.  *Id.* at 357.  Perryman declined and they returned to the Sheetz store.  Perryman exited the car, and the victim got in.  The two men left, leaving the two women – Perryman and Thompson – at the store. The two women were angry at the victim for leaving them at the store and decided, along with Appellant and his friend Eiane McCullum (Co-Defendant), to rob the victim.  Specifically, they planned that the two women would lure the victim to a particular location, where Appellant and Co-Defendant would rob and/or attack him.  These four individuals had previously discussed committing "little robberies," but never acted on their plans.  N.T. Trial Vol. III, 5/24/17, at 358.

On January 3, 2016, Perryman, Thompson, Appellant, Co-Defendant, and a woman named Aja were at a friend's house at 18th and Holly Streets. Thompson testified that she, Perryman, Appellant, and Co-Defendant all decided to execute their plan that night.  N.T., 5/23/17, at 288.  A male — Thompson claimed that she did not know who — called Perryman's phone, and Thompson answered it, while Appellant and Co-Defendant were in the room.

---

[3] The notes of testimony do not state Brian's last name.  *See* N.T. Trial, Vol. II, 5/23/17, at 284.

*Id.* at 289-90.  Thompson stated that the male asked her "stuff [she] didn't know," and she told him she would call back and hung up.  *Id.* at 290.  Thompson left the room and fell asleep.  She was awakened by the phone ringing and answered it.  The same male from the first telephone call told her that "they were on their way," and Thompson relayed this to everyone in the house.  *Id.* at 291.  Thompson, Appellant, Co-Defendant, Aja, and a man named Briel then walked a block and a half to Burchfield Street while Perryman remained at the house.  *Id.* at 291-92.  Thompson hid behind a gate, while the others went elsewhere — Thompson did not know where.  Thompson then saw the victim and another man — later identified as John Cooksey — arrive in a taxi and walk toward a house.  Next, the two men began running, and the victim fell.  Thompson observed "someone walk up to [the victim] and continue shooting," and then run.  *Id.* at 293-294.  Thompson described the shooter as wearing black clothing, but she could not see his face.  Although Thompson herself only referred to one shooter, the Commonwealth asked whether she saw "either of the shooters before the people [sic] started to run," and Thompson responded in the negative.  *Id.* at 293.  Thompson ran back to the house on Holly Street.  Appellant, Co-Defendant, and Aja were already there, along with Perryman, and they all agreed they would not say anything about the shooting.  *Id.* at 295.  Thompson further testified that both Appellant and Co-Defendant were dressed in all black that night.

Perryman testified that on the night of the shooting, she contacted the

victim by text message and arranged to meet him at Burchfield Street. N.T., 5/24/17, at 359. Appellant, Co-Defendant, and Thompson were all with Perryman in the same room when she contacted the victim, and Perryman testified that it was Appellant who suggested the Burchfield Street location. *Id.* at 360. Perryman, however, did not intend to meet the victim, and instead gave her phone to Thompson and went upstairs, where her boyfriend was. Perryman testified that she was not involved with the group again until the next morning, when Thompson told her that while Thompson hid, Appellant and Co-Defendant killed the victim. *Id.* at 362-63, 368. That same day, the police interviewed Perryman, and she stated that she saw Appellant and Co-Defendant with a firearm just before they left the house. *Id.* at 365.

John Cooksey testified that on the evening of the shooting, the victim was at his house playing video games. Although Cooksey lived with his girlfriend, they had a fight, and Cooksey asked the victim if he knew any girls that they could "chill with." N.T. Trial Vol. I, 5/22/17, at 110-111. The victim contacted Perryman and Thompson — who Cooksey did not know — and then Cooksey exchanged text messages with the women as well. *Id.* Cooksey and the victim arranged to meet the women at the house on Burchfield Street, and around 11:00 p.m. or 12:00 a.m., they travelled there by taxi. *Id.* at 113-14. When they arrived, Cooksey went to the porch of the house and the victim went toward the alley. *Id.* at 115. Someone came out of the alley with a gun and Cooksey ran. *Id.* Cooksey stated that the shooter was wearing all black,

- 4 -

but he could not further describe him; Cooksey also described the gun as having a red beam. *Id.* at 116. Cooksey was grazed in the leg by a bullet. *Id.* at 117.

Police responded to the scene and discovered the victim laying facedown with no pulse. Trial Court Opinion, 12/7/17, at 6. An autopsy revealed that the victim sustained 11 gunshots, all fired from 2 to 3 feet or more away, including gunshots to his face, neck, and upper chest, and the back of his hand. *Id.* at 6-7. Forensic testing showed that there were three firearms used in the shooting, and that Appellant's DNA was a match for DNA obtained from .380 cartridge cases recovered from the scene. *Id.* at 7-8.

Appellant, Co-Defendant, Perryman, and Thompson were all charged with murder and related offenses in connection with the shooting. Perryman and Thompson both pled guilty, and agreed to testify at Appellant and Co-Defendant's trial in exchange for the Commonwealth's withdrawal of murder of the second degree charges against them. N.T., 5/23/17, at 297. Appellant and Co-Defendant were tried jointly before a jury from May 22 to 24, 2017. The Commonwealth presented the evidence summarized above. Neither Appellant nor Co-Defendant testified or presented any evidence. The trial court charged the jury on both conspirator and accomplice liability. The jury found both men not guilty of first-degree murder, but guilty of second-degree murder, as well as attempt to commit murder, conspiracy to commit murder, two counts of robbery, conspiracy to commit robbery, and carrying firearms

without a license.[4]

The trial court sentenced Appellant and Co-Defendant on August 4, 2017. The trial court noted that because Appellant was under the age of 18 at the time of the shooting, he was not subject to the mandatory life imprisonment sentence for second-degree murder.[5] The court sentenced him to, *inter alia*, 40 years to life imprisonment for the murder conviction and a consecutive term of 7½ to 20 years for attempted murder. Appellant filed a post-sentence motion in which he challenged the sufficiency of the evidence for all of his convictions. The trial court denied the motion. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors.

Appellant presents the following issue for our review:

Did the trial court err in denying Appellant's motion in arrest of judgment as to counts one through seven — where the Commonwealth's evidence failed to establish that Appellant acted with the required specific intent to conspire or be an accomplice in the commission of murder or robbery?

Appellant's Brief at 6.

Appellant argues that the Commonwealth's evidence failed to establish that he committed any of the seven crimes of which he was convicted or that he could be found guilty under conspirator or accomplice liability. Instead,

---

[4] Co-Defendant's appeal from his judgment of sentence is pending in this Court at **Commonwealth v. McCullum**, 1608 MDA 2017.

[5] **See** 18 Pa.C.S.A. § 1102(b).

Appellant maintains, the evidence showed that he "was merely present while a discussion about a robbery occurred," and the evidence did not suggest that he was involved in the robbery or murder or that he acted with the intent of promoting or facilitating the crimes. *Id.* at 20, 23. Appellant reasons that even if the Commonwealth showed that he knew about the plan to rob the victim, there was no evidence to prove he was more than a mere associate of whoever robbed and killed the victim. Appellant further points out that there was no evidence establishing the identities of the shooters, and the fact that his DNA matched DNA found on a cartridge casing at the shooting scene shows only that at some time, Appellant "was in the same vicinity [sic], nothing more." *Id.* at 22. We disagree.

This Court has stated:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence

produced, is free to believe all, part or none of the evidence.

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator."

As our Court has further explained with respect to the agreement element of conspiracy:

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. . . . Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. McCall*, 911 A.2d 992, 996-97 (Pa. Super. 2006) (citations omitted); *see also* 18 Pa.C.S.A. § 903(a)(1) (conspiracy).

The record belies Appellant's claim that the evidence showed he was "merely present" while others discussed robbing the victim. Both Thompson and Perryman testified that Appellant participated in their discussions — along with Co-Defendant — about robbing the victim, and Thompson specifically stated that all four of them decided on January 3, 2016 to rob the victim that night. N.T., 5/23/17, at 287, 288; N.T., 5/24/17, at 358. Further, both Thompson and Perryman testified that Appellant was in the room with them when they contacted the victim and Cooksey to meet them, and Perryman testified that it was Appellant who suggested the Burchfield Street location.

N.T., 5/24/17, at 360. Additionally, it was undisputed that when Thompson heard from a male telephone caller that "they were on their way," Appellant went with Co-Defendant, Thompson and Aja to Burchfield Street, where the victim, immediately upon arriving, was shot; after the shooting, all five individuals agreed to not say anything about it. N.T., 5/23/17, at 291, 295. The jury was free to believe this testimony, and thus the evidence was sufficient to show that Appellant entered into an agreement with others to rob the victim, share criminal intent, and act overtly in furtherance of the conspiracy. *McCall*, 911 A.2d at 996-97. The Commonwealth was not required to present direct evidence to establish Appellant's identity as the shooter because "he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy." *See id.*

Based on the foregoing, the evidence was sufficient to support Appellant's conviction of conspiracy, and the corresponding convictions of the other offenses — second-degree murder of the victim, attempted murder of Cooksey, two robbery counts, and carrying a firearm without a license — under the theory of conspirator liability. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/11/2018